CHARLES DIMICK, Appellant, *v.* CLAUDETTE HARRIS DIMICK, Respondent.

No. 25828

April 30, 1996                                  915 P.2d 254

*Marshal S. Willick,* Las Vegas, for Appellant.

*Daniel Marks,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Charles Dimick (Charles) and respondent Claudette Dimick (Claudette) were married in August 1989. Prior to their marriage, the couple had a child. The day before their wedding, they signed a prenuptial agreement which provided that in the

event of divorce Charles would pay $200.00 spousal support for each month that they had been married and that all community property would be liquidated and divided upon divorce, seventy-five percent going to Claudette and twenty-five percent going to Charles. The agreement also provided that in the event the agreement was contested, the non-prevailing party would pay all attorney's fees.

Charles filed a complaint for divorce in September 1992. After lengthy pre-trial proceedings, the case went to trial in November 1993. Claudette contested the enforceability of the agreement, but she eventually stipulated to its validity shortly before the evidentiary hearing which had been scheduled to determine whether the agreement was valid and enforceable.

On appeal, Charles claims four errors, namely: (1) that the trial court erred in refusing to award attorney's fees to him as "prevailing party"; (2) that the trial court erred in not giving him proper credit toward his spousal support obligation; (3) that the trial court erred in giving Claudette an interest in property described as the Fort Apache property; and (4) that the trial court erred in not restoring certain separate property (a bed) to him. We conclude that Charles is entitled to relief on the claims regarding the Fort Apache property and the bed. We reject Charles' remaining claims.

## ATTORNEY'S FEES

The agreement in question provides that "[i]n the event that either party is required to take legal action to enforce the provisions of this agreement, the non-prevailing party shall be responsible for all attorney's fees and costs of suit relating to said action." Charles asserts that he is entitled to recover attorney's fees under this paragraph and claims that it was error for the court to deny him fees. We disagree.

Charles did not take legal action to enforce the provisions of the agreement. Rather, he filed a divorce action in which he asked for a division of the property according to the provisions of the prenuptial agreement, an agreement which he had breached at the time the action was filed. Even though Claudette's initial answer denied the validity of the agreement, before any hearing was held or evidence presented, she stipulated to the validity of the agreement. Under these circumstances, Claudette cannot be considered a "non-prevailing party" for the purpose of awarding attorney's fees under the agreement. Although the prenuptial agreement does not define a "non-prevailing party," this court has consistently held that a party cannot be a "prevailing party" where the action has not proceeded to judgment. Works v. Kuhn,

103 Nev. 65, 68, 732 P.2d 1373, 1375-76 (1987). In *Works*, the parties agreed to a settlement prior to trial and the respondents voluntarily dismissed the counterclaim with prejudice based upon that settlement. This court stated that "[u]nder these circumstances, we conclude that appellant cannot be considered as having prevailed in this action." *Id.* Neither can Claudette be considered a "non-prevailing party" when she stipulated not to contest the validity of the prenuptial agreement.

Contract provisions for the payment of attorney's fees by the losing party provide an incentive to settle and reduce litigation. This incentive would be lost if this court holds that a party cannot abandon a claim without being subject to paying attorney's fees. A party would be penalized for settling cases or abandoning claims, with the result that the very purpose of fee-paying provides would be frustrated.

It is particularly unfair to award attorney's fees to Charles under the agreement when Charles failed to fulfill any of his obligations under the agreement at the time that Claudette filed her answer to the divorce complaint. At that time, it appeared that Charles desired that only Claudette be held to the agreement. We affirm the trial court's judgment disallowing attorney's fees under the stated provisions of the contract.

### SPOUSAL SUPPORT

The section in the prenuptial agreement headed "Spousal Support," reads:

> Mr. Dimick agrees upon execution of this agreement to create a trust fund with Ms. Harris as the beneficiary, and agrees to deposit $200.00 per month into said trust fund. If the parties remain married and during the marriage Ms. Harris predeceases Mr. Dimick, the proceeds of said fund shall pass for the benefit of any children born of this relationship, in equal degree, including the parties' now-living child LINDSAY.
>
> It is also the intent of the parties that the 75%/25% liquidation and distribution of assets upon divorce is to provide additional spousal support to Ms. Harris in the event of dissolution of the marriage.

Charles contends that any obligation that he might have for spousal support is settled by the foregoing language. He claims that his total spousal support obligation may be calculated simply by multiplying $200.00 per month by the number of months that he was married (fifty-one months—August 1989 to November

1993) giving a product of $10,200.00, as his total spousal support obligation.

Charles's claim does not, however, take into account his obligation to pay temporary spousal support, an obligation created, during trial, in response to Claudette's motion for temporary support. At the hearing on Claudette's motion the trial court stated, "Spousal support— he's been paying the house payment, that should continue." This statement appears to mean that Charles' obligation to support Claudette during the pendency of the action was to be fulfilled by Charles' making the mortgage payments on the house. The agreement, itself, provides that its purpose "is to provide additional spousal support to [Claudette] in the event of dissolution of marriage."[1] We conclude that Charles' contractual obligation, devised to provide for Claudette after divorce, is separate entirely from the order for temporary support issued by the court during the divorce proceedings. As a consequence, we conclude that the trial court was correct in ruling that mortgage payments, to be made in lieu of temporary support payments during the pendency of the divorce action, may not be properly credited to Charles' contractual, post-divorce spousal support obligation of $10,200.00. We affirm the trial court's order in this regard.

### FORT APACHE PROPERTY

In July 1990, Charles' company, Dimick Development (Development) agreed to do construction work for a Dr. Valladares, in exchange for a lot in the neighborhood being developed (the Fort Apache property). Charles signed both his name and Claudette's name to the trade-out purchase agreement. Charles and Claudette signed "vesting instructions" for the escrow company which provided that title should be vested in Claudette and Charles as joint tenants when escrow closed. Development completed $82,000.00 worth of work on Dr. Valladares' land.

Development ran into some very serious business problems, including an outstanding debt to Jerry Walker. Walker threatened to sue, and Charles agreed to assign Development's right to the Fort Apache property to Walker. Development never took title to the Fort Apache property. Claudette refused to sign the docu-

---

[1]The agreement actually provides that Charles was to create a trust fund for the benefit of Claudette into which he would pay $200.00 each month during the term of the marriage. Charles had never complied with the terms of this agreement, but it is reasonable to infer that the intent was to give Claudette, in some manner, an amount equal to $200.00 for every month of the marriage.

ments assigning the interest in the Fort Apache property, and so Charles signed her name to the documents on August 15, 1991.

The district court found that the Fort Apache property had been placed in joint tenancy and Claudette should receive seventy-five percent of the value of that property, valued at the time of its assignment. The district court further found that Claudette should receive an additional $2,000.00 as a sanction for Charles' misconduct in signing her name to the documents assigning the interest in the Fort Apache property.

The dispositive question in determining whether Claudette had an interest in the Fort Apache property is whether any of the documents signed by Charles alone, or by Charles and Claudette together, transferred a property interest to Claudette.

NRS 111.105 provides, in pertinent part, that "[c]onveyances of land . . . may be made by deed, signed by the person from whom the estate or interest is intended to pass . . . and acknowledged or proved, and recorded as directed in this chapter." In this case, there was never delivery of the deed to Development or to Charles and Claudette.

Claudette argues that the parties had an interest in the property because the purchase agreement had both their names on it. However, pursuant to NRS 111.105, merely signing a purchase agreement is insufficient to convey an interest in property. The district court erred in finding that Claudette had an interest in the Fort Apache property and further erred by awarding her a portion of the proceeds from the assignment of that property and sanctioning Charles for signing her name to the assignment. The district court's order as to the Fort Apache property and the sanction of $2,000.00 assessed against Charles is reversed.

## SEPARATE PERSONAL PROPERTY

The district court ordered that "[e]ach party shall have their [sic] own personal property, which is in their [sic] possession, as their [sic] sole and separate property." Claudette admitted at trial that she still had the bed which Charles had brought to the marriage and which had been used as the marital bed. While NRS 125.150(4) provides that the separate property of a spouse may be awarded to the other spouse for support, there is no indication that the district court intended to make such an award in this instance. It was error for the district court to fail to order that the personal separate property of each party be returned, absent some finding that the property must be awarded as support. Therefore, we reverse the district court's order as to personal separate property and remand so that the district court may make the

appropriate findings and award of personal separate property to each party.

The trial court's order awarding attorney's fees and refusing to allow credit on Charles' temporary spousal obligation to be given for his making of mortgage payments is affirmed. The trial court's order relating to the Fort Apache property and Charles' separate property is reversed for the reasons stated in this opinion. Accordingly, we remand this matter to the district court for modification of the divorce decree and order in accordance with this opinion.